**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **DYLAN WADE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TIMBERLAND PARTNERS, INC.; TPAF VII MEADOWRIDGE LLC; and KARIN WOODWORTH,**<br><br>**Defendants.** | **Case No.** ____________________ |

**COMPLAINT**

**RELATED CASE:** Briggs v. Timberland Partners, Inc., No. 4:25-cv-01022-SRC

**INTRODUCTION**

1. Plaintiff Dylan Wade brings this action to seek redress for his own injuries caused by Defendants' discriminatory housing practices at Meadow Ridge Apartments. Dylan lived in apartment 433 at Meadow Ridge Apartments with his mother, Kenisha Briggs, and his brother, Kyran Mullins, throughout time of the events alleged below. Dylan was a minor, was identified as an authorized occupant, and was entitled to use and enjoy the family's dwelling without discrimination because of his association with Kyran, a person with a disability.

2. Kyran had autism spectrum disorder and a known tendency to elope from safe, supervised areas without appreciating the danger. After an earlier elopement, the household submitted a written request for a disability-related lock on the apartment's entry door. Defendants delayed the request for more than two months, required an additional form they could not produce, and failed to install or authorize the requested safety measure before Kyran eloped and died on March 14, 2022.

3. Defendants' delay deprived Dylan of the safe and equal use of his home, exposed him to the immediate consequences of the very danger identified in the request, and caused him substantial emotional injury.

4. After Kenisha exercised the household's fair-housing rights, Defendants refused rental-assistance payments and issued a notice of non-renewal of the lease without giving proper notice to Plaintiffs. The nonrenewal displaced Dylan from his home and forced relocation of the family to a school district over 30 miles away. HUD has recently included the retaliation allegations in the pending administrative complaint, in which Dylan is identified as an Other Aggrieved Party.

## JURISDICTION AND VENUE

5. This action arises under the Fair Housing Act, 42 U.S.C. §§ 3601-3619. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a).

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Meadow Ridge Apartments is located in St. Charles County, Missouri, and a substantial part of the events and omissions giving rise to Dylan's claims occurred in this District.

7. This action is related to Briggs v. Timberland Partners, Inc., No. 4:25-cv-01022-SRC, which concerns the same dwelling, request for reasonable modification, Defendants, and course of conduct.

## TIMELINESS AND ADMINISTRATIVE PROCEEDINGS

8. On October 20, 2022, the United States Department of Housing and Urban Development accepted a housing discrimination complaint arising from Defendants' handling of the disability-related request. A verified HUD complaint signed on January 25,

2023 identifies Dylan Wade as an Other Aggrieved Party and alleges discrimination based on disability association and race.

9. HUD has since recently included Kenisha Briggs's retaliation claim concerning Defendants' refusal to continue accepting rental assistance payments and their nonrenewal of the household's lease. The HUD proceeding remains pending.

10. Under 42 U.S.C. § 3613(a)(1)(B), the time during which the HUD administrative proceeding has been pending is excluded from the Fair Housing Act's limitations period. Dylan's claims concern the same discriminatory housing practices addressed in the pending HUD matter and are timely.

11. Under 42 U.S.C. § 3613(a)(2), Dylan may bring this civil action without regard to the current status of the HUD complaint.

## PARTIES

12. Plaintiff Dylan Wade is an adult. During the events at issue, he was a minor, a continuous resident of 433 Grand Ridge Court at Meadow Ridge Apartments, and an authorized occupant identified on the household's lease. Dylan is Kyran Mullins's brother and Kenisha Briggs's son.

13. Defendant TPAF VII Meadowridge LLC owned Meadow Ridge Apartments, located at 2000 Styling Ridge Drive, St. Peters, Missouri 63304, including the dwelling at 433 Grand Ridge Court. Meadow Ridge Apartments contains more than 100 rental units and is a dwelling within the meaning of 42 U.S.C. § 3602(b).

14. Defendant Timberland Partners, Inc. operated and managed Meadow Ridge Apartments and participated in the policies, practices, decisions, and omissions alleged in this Complaint.

15. Defendant Karin Woodworth was the property manager of Meadow Ridge Apartments during the relevant period. Woodworth acted within the course and scope of her actual or apparent authority for TPAF VII Meadowridge LLC and Timberland Partners, Inc. Those entities authorized, ratified, or adopted her acts and omissions.

16. At all relevant times, each Defendant acted individually and through its or her agents, employees, representatives, and persons whose conduct the Defendant authorized or ratified.

**FACTUAL ALLEGATIONS**

17. Kenisha Briggs moved into the Meadow Ridge dwelling with her children, Dylan and Kyran, in approximately January 2019.

18. Kyran was an adult with autism spectrum disorder. Kenisha served as permanent guardian of his person and estate.

19. A manifestation of Kyran's disability was elopement: leaving a safe and supervised area without permission and without awareness of the dangers involved.

20. Dylan lived with Kyran and Kenisha in the dwelling at all times material to this Complaint. Dylan was an authorized occupant and, like every member of the household, depended on Defendants to process disability-related housing requests promptly and fairly.

21. On or about December 30, 2021, Kyran eloped from the apartment but was safely recovered.

22. Following that incident, Kenisha contacted Shane Yardley, Kyran's case manager at the St. Charles County Developmental Disabilities Resource Board.

23. On December 31, 2021, Yardley prepared a written disability-related request on Kyran's behalf asking that a deadbolt key lock be installed on the entry door to prevent further elopement from the home.

24. The requested measure was connected directly to Kyran's disability and was necessary to allow Kyran and the other members of his household, including Dylan, an equal opportunity to use and enjoy the dwelling safely.

25. In early January 2022, after the leasing office reopened from a holiday closure, Kenisha hand-delivered the written request to the leasing office employee at the front desk.

26. At that time, Kenisha received assurance that Woodworth, the property manager, would receive the request when Woodworth returned to the office.

27. While awaiting action, Kenisha slept in the living room and barricaded the apartment's front entry. During this time, Dylan was tasked with lifting and stacking the chairs used to barricade the entry and waking up at night to help keep watch over the premises to ensure that the barricade remained undisturbed. These extraordinary measures affected the entire household's ordinary and safe use of the dwelling, including Dylan's.

28. Within days, Kenisha returned to the leasing office and spoke with Woodworth. Woodworth stated that a Timberland Partners accommodation form had to be completed before Defendants would act on the request.

29. When Kenisha asked for the form, Woodworth stated that she first had to locate it. Woodworth did not provide the form.

30. In mid-January 2022, Kenisha emailed to ask when the form would be provided and when the requested lock could be installed. Neither Woodworth nor any other member of management responded.

31. During January and February 2022, Kenisha returned to the leasing office repeatedly. Woodworth continued to state that she had not located the form Defendants insisted was required.

32. Defendants had reliable written information identifying Kyran's disability, his recent elopement, the resulting danger, and the relationship between his disability and the requested safety measure.

33. Defendants nevertheless failed to engage in a prompt, good-faith evaluation or assessment of the request; failed to identify any information needed to evaluate the request; failed to provide the form they demanded; and failed to approve, permit, or even deny a timely modification.

34. On March 10, 2022, more than two months after delivery of the written request, Kenisha went to the leasing office and refused to leave until Woodworth addressed the request.

35. Woodworth still did not provide the purported form. She did, however, contact a lock company, and an appointment concerning installation was scheduled for March 15, 2022.

36. On March 14, 2022, before the scheduled appointment and while the requested safety measure remained absent, Kyran eloped from the apartment and was struck and killed by a motor vehicle.

37. Dylan was inside the apartment when Kyran left. The fatal elopement occurred from Dylan's own home and was the realization of the precise, known danger that prompted the December 31, 2021 written request.

38. Defendants' prolonged inaction and procedural obstruction deprived Dylan of the safe, secure, and equal use and enjoyment of his dwelling because of his association with Kyran and Kyran's disability.

39. On September 23, 2022, Kenisha filed a charge of discrimination with the Missouri Commission on Human Rights, MCHR Case No. H-09/22-04830, challenging Defendants' failure to honor the household's fair-housing rights.

40. Before the charge, Defendants had accepted rent for the household through the Missouri State Assistance for Housing Relief program. The program paid rent in advance in three-month increments, and Defendants had not expressed any intent to reject those payments.

41. On October 11, 2022, shortly after receiving notice of Kenisha's charge, Defendants informed Kenisha that they would no longer accept the rental assistance payments.

42. HUD accepted the household's fair housing complaint on or about October 20, 2022 and informed Kenisha that the respondents would be notified. On information and belief, Defendants received notice of the administrative complaint shortly thereafter.

43. On or about November 14, 2022, Defendants issued a Notice of Non-Renewal requiring the entire household to vacate by January 1, 2023, without providing the requisite 60 days' notice required by the lease agreement.

44. The nonrenewal applied to Dylan and removed his right to remain in the dwelling. Dylan was a minor occupant, and the adverse housing action followed protected fair housing activity undertaken by his mother on behalf of the household.

45. Because the household had pursued fair housing rights, Dylan lost his home and was forced to relocate on an emergency basis with his family. Dylan was uprooted from the high school he had attended up to that point, away from his network of classmates and friends, and was relocated to a school district approximately 30 miles away.

46. HUD has included these retaliation allegations in the pending administrative matter in which Dylan is identified as an Other Aggrieved Party.

## DYLAN WADE'S INJURIES

47. Dylan suffered injuries personal to him. Defendants deprived him of the safe and equal use of his dwelling, subjected him to fear and housing insecurity, interfered with his federally protected housing rights, and displaced him from his home.

48. Dylan also suffered serious emotional distress from Defendants' failure to address a known disability-related danger in his home, from being present in the home when that danger culminated in Kyran's fatal elopement, and from the retaliatory loss of the family's housing.

49. Dylan does not assert a separate Missouri wrongful death claim in this action. He seeks recovery for his own injuries caused by Defendants' discriminatory housing practices and interference with his rights under the Fair Housing Act.

50. Defendants acted with reckless or callous indifference to Dylan's federally protected rights. They knew of the disability-related danger, imposed a procedural barrier they could not satisfy, ignored repeated follow-up efforts, and later subjected the household to adverse housing action after Kenisha exercised her rights pursuant to the federal Fair Housing Act.

## COUNT I
## DISABILITY ASSOCIATION DISCRIMINATION AND FAILURE TO PERMIT A REASONABLE MODIFICATION OR ACCOMMODATION
## 42 U.S.C. § 3604(f)

51. Dylan incorporates paragraphs 1 through 50 as though fully set forth here.

52. Dylan is an aggrieved person within the meaning of 42 U.S.C. § 3602(i) because he was injured by Defendants' discriminatory housing practices.

53. Kyran was a person with a handicap within the meaning of 42 U.S.C. § 3602(h), and Dylan was a person residing with and associated with Kyran.

54. Defendants discriminated against Dylan in the terms, conditions, privileges, services, and facilities connected with his dwelling because of Kyran's disability, in violation of 42 U.S.C. § 3604(f)(2).

55. The requested lock was a reasonable modification necessary to afford Kyran and his household the full enjoyment of the premises under 42 U.S.C. § 3604(f)(3)(A). To the extent the request required an exception to or change in Defendants' rules, policies, practices, or services, it was also a reasonable accommodation necessary to afford equal use and enjoyment under 42 U.S.C. § 3604(f)(3)(B).

56. Defendants knew or should have known of Kyran's disability, the disability-related need, and the immediate risk the request addressed.

57. Defendants' unjustified delay, failure to respond, insistence on an unavailable additional form, and failure to approve or permit the requested measure within a reasonable time amounted to a refusal under the Fair Housing Act.

58. Defendants' conduct directly injured Dylan by depriving him of equal housing services and the safe use and enjoyment of his home, causing emotional distress, and producing other compensable harm.

59. Defendants' conduct was intentional and was undertaken with reckless or callous indifference to Dylan's federally protected rights, supporting an award of punitive damages.

## COUNT II
## INTERFERENCE WITH FAIR HOUSING RIGHTS
## 42 U.S.C. § 3617

60. Dylan incorporates paragraphs 1 through 59 as though fully set forth here.

61. Dylan and his household exercised and enjoyed, or attempted to exercise and enjoy, rights protected by 42 U.S.C. § 3604(f), including the right to seek a reasonable disability-related modification or accommodation without obstruction.

62. Defendants interfered with those rights by imposing an unnecessary additional form, failing to provide that form, ignoring follow-up communications, delaying action for more than two months despite notice of the danger, and failing to process the request promptly and in good faith.

63. That interference burdened Dylan's own use and enjoyment of the dwelling and caused him personal injury.

64. Defendants acted intentionally and with reckless or callous indifference to Dylan's federally protected rights, supporting an award of punitive damages.

## COUNT III
## RETALIATION AND INTERFERENCE
## 42 U.S.C. § 3617

65. Dylan incorporates paragraphs 1 through 64 as though fully set forth here.

66. Kenisha engaged in activity protected by the Fair Housing Act on behalf of the household by requesting a disability-related modification or accommodation, filing a charge with MCHR, and pursuing a complaint with HUD.

67. Defendants knew of that protected activity.

68. After learning of the charge and HUD complaint, Defendants refused to continue accepting the household's rental assistance payments and issued a Notice of Non-Renewal that required Dylan and the rest of the household to leave the dwelling, rendering them homeless.

69. The timing, sequence, and departure from Defendants' prior course of dealing support a plausible inference that the adverse actions were taken because Kenisha exercised and aided the exercise of rights protected by the Fair Housing Act.

70. By directing the adverse housing action at the entire household, Defendants coerced, intimidated, threatened, or interfered with Dylan’s ability to exercise and enjoy the rights protected by the Fair Housing Act and retaliated against the household for protected activity.

71. The retaliation and interference caused Dylan to lose his housing, relocate on an emergency basis, suffer housing insecurity and emotional distress, and sustain other compensable injury.

72. Defendants acted intentionally and with reckless or callous indifference to Dylan's federally protected rights, supporting an award of punitive damages.

## COUNT IV
## NEGLIGENCE

73. Plaintiff Dylan Wade incorporates by reference paragraphs 1 through 72 of this Complaint as though fully set forth herein.

74. Defendants owned, operated, and managed Meadow Ridge Apartments; controlled the processing, approval, and permission necessary for the requested disability-

related lock modification; and undertook to address that requested safety measure by requiring additional documentation and later contacting a lock company to schedule installation.

75. Defendants owed Dylan a duty to exercise ordinary care in undertaking to process, approve, permit, and arrange the requested lock modification after receiving written notice of Kyran's disability, recent elopement, the danger posed by further elopement, and the need for the requested lock to prevent that danger.

76. Defendants breached that duty by, among other acts and omissions:

- Failing to process the request promptly and with reasonable care;
- Insisting that the household complete an additional form while failing to provide that form;
- Failing to respond to follow-up communications concerning the form and installation;
- Failing to identify any information actually needed to evaluate the request;
- Failing timely to approve, permit, deny, or arrange installation of the requested lock; and
- Delaying action for more than two months despite notice of the specific and immediate danger the requested lock was intended to address.

77. Defendants' breach was a direct and proximate cause of Dylan's injuries. The requested lock remained absent when Kyran eloped from the apartment on March 14, 2022, before the installation appointment scheduled for the following day. The fatal elopement

occurred from Dylan's home and realized the precise danger identified in the written request.

78. Defendants also exercised exclusive control over whether to renew the household's lease and issued a notice of non-renewal on or about November 12, 2022, requiring Dylan and the household to vacate the premises before January 1, 2023.

79. At the time of the non-renewal, Defendants knew that Dylan was a minor, an authorized occupant of the dwelling, and dependent upon the household's continued housing stability. Defendants further knew that their decision to refuse renewal would displace Dylan from his home and require him to relocate.

80. To the extent Defendants undertook obligations independent of the lease agreement concerning the administration of Dylan's housing, Defendants owed Dylan a duty to exercise ordinary care in carrying out those obligations and in implementing the non-renewal decision. Defendants breached that duty by issuing or enforcing the non-renewal without providing 60 days' notice as required by the terms of the lease agreement, without adequate cause and despite knowledge that the non-renewal would foreseeably displace Dylan.

81. As a direct and proximate result of Defendants' negligent acts and omissions, Dylan suffered injuries personal to him, including loss of the safe and secure use of his home, fear, housing insecurity, serious emotional distress, displacement, relocation-related losses, and other compensable damages.

82. Dylan seeks recovery in this Count solely for his own injuries and damages. He does not seek recovery under this Count for Kyran's personal injuries, death, or damages belonging to a wrongful-death claim.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Dylan Wade respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally to the extent permitted by law, and award:

1. Actual and compensatory damages, including damages for emotional distress, loss of housing security, displacement, and other injuries proved at trial;
2. Punitive damages in an amount sufficient to punish and deter the unlawful conduct;
3. Prejudgment and post-judgment interest as allowed by law;
4. Reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2); and
5. All other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
s/Ge'Andra D. Johnson

Ge'Andra D. Johnson, #32810OK
Johnson Legal, P.L.L.C.
11914 N. Pennsylvania Ave., Ste. B-5
Oklahoma City, OK 73120
405-648-5273: Telephone
405-673-7322: Facsimile
Email: gjohnson@johnsonlegalok.com
**ATTORNEYS FOR PLAINTIFF DYLAN WADE**